**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SHASHI BARNIA, DDS, and AAA DENTAL PC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>AMANDEEP KAUR, D.D.S., TEJPREET SINGH, M.D., and AMANDEEP KAUR, D.D.S. P.C., )<br><br>Defendants. ) | Civil Action No. 1:22-CV-10216-AK |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiffs Shashi Barnia, DDS ("Dr. Barnia"), and his professional corporation, AAA

Dental PC, bring this action against Amandeep Kaur, DDS ("Dr. Kaur"), Tejpreet Singh, MD

("Dr. Singh"), and Dr. Kaur's professional corporation, Amandeep Kaur DDS, PC.  Dr. Barnia

alleges that the defendants fraudulently enticed him into an employment agreement and then

denied him the payment of a nondiscretionary annual profit-based bonus.  He further alleges that

defendants published false and defamatory statements about him and inflicted emotional distress

by threatening him with deportation and criminal sanction if he did not agree to their financial

demands.  Additionally, Dr. Barnia seeks to enforce the sale of two dental practices.  He alleges

that defendants used unfair and deceptive practices when they breached their contractual

obligations to sell the practices to him at a previously agreed upon price.  The defendants have

1

filed a motion to dismiss Plaintiff's Amended Complaint for failure to state a claim. [Dkt. 13].[1] Dr. Barnia opposes the motion.

For the following reasons, the defendants' motion to dismiss for failure to state a claim [Dkt. 13] is **GRANTED IN PART** and **DENIED IN PART**.  The motion as to Counts I, III, IV, VI, V, VII, VIII, IX, and X is **DENIED**.  The motion as to Counts II (Wage Act) is **GRANTED**.

## I.    Background

The following facts are drawn from the Complaint [Dkt. 12] and taken as true for the purposes of a motion to dismiss for failure to state a claim.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013); see also Fed. R. Civ. P. 12(b)(6).

### A.  Dr. Barnia's Employment with Defendants and Bonus

Dr. Barnia was operating a dental practice in Texas when, around August 13, 2013, the defendants, who are extended family members, came and visited his family after Dr. Barnia experienced a personal tragedy.  [Dkt. 12 "Am. Cmplt." at ¶ 11].  During the visit, Dr. Kaur suggested Dr. Barnia move to Massachusetts, the state where he began his dental career, and assist her in launching a new dental practice.  [Id. at ¶¶ 9, 12].  Based in New York, Dr. Kaur was unable to move and launch the new practice herself.  [Id. at ¶ 12].  Dr. Barnia was persuaded by Dr. Kaur's promise that in addition to his salary, he would receive an annual management bonus that was equivalent to 50% of the profits the practice made.  [Id. at ¶ 13].  Around February 2014, Dr. Barnia moved back to Massachusetts to begin the work to set up the dental practice.  [Id. at ¶ 14].

After his arrival, Dr. Barnia discussed with Dr. Kaur the 50% nondiscretionary profits-based management bonus ("management bonus") which was owed and payable to Dr. Barnia at

---

[1] As a result of Dr. Barnia's amended complaint [Dkt. 12], the defendants' initial motion to dismiss [Dkt. 8] is denied as moot.

the end of each calendar year and would be determined by defendants based on their accounting. [Id. at ¶ 15]. Dr. Barnia's work visa did not permit him to have an ownership interest in the same business in which he was employed.  [Id. at ¶ 16].  As a result, Dr. Kaur advised Dr. Barnia that the management bonus should be excluded from the written contract because U.S. Citizenship and Immigration Services could misinterpret its profit-sharing aspect as an ownership interest if it were in the employment contract.  [Id.].  According to Dr. Barnia, Dr. Kaur reiterated the promise of the management bonus and based on their family relationship, Dr. Barnia trusted her and agreed to exclude it from his employment agreement.  [Id. at ¶ 17].

Dr. Barnia then identified the site of the new practice and prepared its launch by ordering the relevant supplies, hiring staff, and more.  [Id. at ¶ ¶ 18-20].  The new dental practice, Webster Smiles, opened around September 2014, and Dr. Barnia began to manage its day-to-day operations.  [Id. at ¶ 21].  The practice's accounting was handled in New York by Dr. Kaur's accountant.  [Id. at ¶ 22].  While Dr. Barnia did have access to the corporate bank account information, which he claims was insufficient to accurately calculate the profits of the dental practices, he did not have access to the practice's bank accounts or bank statements.  [Id.].

Webster Smiles quickly became financially successful and was able to pay off a $450,000 loan, which Dr. Kaur had obtained to launch the practice, exclusively using its profits. [Id. at ¶ 23].  Dr. Barnia claims that when he raised the practice's profitability and his management bonus, Dr. Kaur would tell him that while the practice was bringing in revenue, it was not yet profitable.  [Id.].

In 2017, Dr. Kaur asked Dr. Barnia to open a second dental practice and again promised the same management bonus.  [Id. at ¶ 24].  Dr. Barnia again scouted and selected the location, recruited staff, managed construction, and took care of other matters in order to launch the

practice. [Id. at ¶ 25]. The second practice was opened under Dr. Amandeep Kaur DDS, P.C. and was called Palmer Dental. [Id. at ¶ 24]. Dr. Barnia alleges that he was the sole decision-maker for both dental practices, and that he had the defendants' express authorization to be the signatory on all business matters including credentialing documents, leases, and insurance submissions. [Id. at ¶ 26]. The defendants regularly mailed Dr. Barnia signed checks for him to use to pay bills for the practices. [Id. at ¶ 27]. Throughout their business relationship, Dr. Barnia would sign documents on Dr. Kaur's behalf and then send them to her. [Id. at ¶ 37]. Defendants acknowledged this and did not object to the practice. [Id.]. Dr. Kaur would receive, approve, and rely on these documents. [Id. at ¶ 47].

At some point during the COVID-19 pandemic, Dr. Barnia gained access to the dental practices' bank accounts. [Id. at ¶ 22]. By 2021, the dental practices were producing approximately $2.5 million in annual revenue. [Id. at ¶ 28]. While he was not able to calculate the business profits, Dr. Barnia began to believe that he was being denied the management bonus he was promised. [Id.]. He requested that Dr. Kaur provide two years of the practices' tax filings, and Dr. Kaur declined to do so. [Id.]. Dr. Barnia never received a management bonus, and an accounting of the practice's profits was never provided to him. [Id.]. Dr. Barnia began to believe that Dr. Kaur would never give the management bonus he believed he was owed and that instead that the defendants were siphoning the practices profits to pay for personal expenses. [Id. at ¶ 29].

**B. Attempted Sale of the Dental Practices**

In July 2021, Dr. Barnia again raised the issue of the unpaid management bonus and told defendants that he was considering either leaving the practices or purchasing them from defendants. [Id. at ¶ 30]. Defendants indicated that they were willing to sell the practices and

the parties began discussing terms of a transfer.  [Id. at ¶ 31].  The parties agreed upon a price of $700,000 around July 2021.  [Id. at ¶¶ 31-32].  Dr. Barnia formed a corporation, AAA Dental PC, which would take title of the assets of both dental practices.  [Id. at ¶ 32].  The change of ownership was set for August 16, 2021, with all income prior to that date going to the defendants and all income subsequent going to Dr. Barnia's business account.  [Id.].

Over the next few months, the parties performed pursuant to the agreement.  With the defendants' knowledge, AAA Dental PC began paying the dental practices' expenses and receiving revenue and proceeds from insurance companies.  [Id. at ¶ 33].  Around September 2021, Dr. Barnia paid a $30,000 bill for the defendants from an AAA Dental PC account after Dr. Singh's requested help covering certain bills.  [Id.].  The defendants would also regularly discuss closing their financial accounts with Dr. Barnia.  [Id.].  In phone and email conversations about the sale, the parties would discuss the change in ownership.  [Id. at ¶ 35].  On or around September 2021, Dr. Barnia forwarded to defendants the change of lease documents for Webster Smiles, which Dr. Singh replied to by asking to update the respective names.  [Id.].  Dr. Barnia claims he would not have incurred these expenses, or continued working at the dental practices, had the sale not been in process.  [Id. at ¶ 34].

When Delta Dental requested a written purchase and sale agreement before they would input the change of ownership into their insurance credentialing payment systems, Dr. Barnia contacted the defendants to create such a document.  [Id. at ¶ 39].  Dr. Barnia found a simple purchase and sale agreement online, added relevant details including the $700,000 purchase price, and sent it to the defendants.  [Id.].  Dr. Kaur stated that the agreement was too simple and requested several revisions.  [Id. at ¶ 40].  After Dr. Barnia sent the updated revisions, Dr. Singh

in a voicemail acknowledged that the price was acceptable but claimed he wanted to review the non-monetary terms with his attorney or accountant. [Id.].

Dr. Singh then sought to change the sale price to $988,500.  [Id. at ¶ 41].  On a Facetime call on October 27, 2021, Dr. Singh again insisted that Dr. Barnia pay the $988,500.  [Id. at ¶ 42].  According to Dr. Barnia, when he refused because the previous price was $700,000, Dr. Singh threatened Dr. Barnia.  [Id.].  He reminded Dr. Barnia that while he was a U.S. citizen, Dr. Barnia was not.  [Id.].  Dr. Singh threatened that Dr. Barnia would suffer immigration consequences if he did not pay the new higher price.  [Id.].  Dr. Singh further told Dr. Barnia that if he did not give into his demands, that Dr. Singh and Dr. Kaur would go to the police and raise baseless, fabricated, or invented charges to get Dr. Barnia criminally prosecuted and deported. [Id.].  Dr. Barnia then acquiesced and agreed to the sale price of $988,500. [Id. at ¶ 43].  He requested 6-8 months to raise the money.  [Id.].  After initially saying the money had to be paid immediately, which Dr. Barnia could not do without selling his house, the two instead agreed that the payment was to be made in four to six weeks.  [Id.].

On November 2, 2021, Dr. Singh demanded Dr. Barnia pay $150,000 within the next three days.  [Id. at ¶ 44].  Dr. Barnia told Dr. Singh that he would only be able to pay $108,000 by that time.  [Id.].  On November 4, 2021, the defendants traveled to Massachusetts and told representatives of Palmer Dental that Dr. Barnia had been fired.  [Id. at ¶ 45].  The defendants changed the locks in the office and forwarded text messages and letters to multiple third parties including an insurance company which stated that Dr. Barnia had been fired, that he had engaged in insurance fraud, and that he had forged Dr. Kaur's signature.  [Id.].  One such publication, which was sent to an insurance company, accused Dr. Barnia of fraudulently using Dr. Kaur's

tax identification information and forging her signature.  [Id. at ¶ 46].  Dr. Barnia claims that

these statements were both false and defamatory.  [Id.].

Dr. Kaur and Dr. Singh also visited the police station to report Dr. Barnia.  [Id. at ¶ 48].

According to Dr. Barnia, they provided false and fabricated information in the hopes of seeing

Dr. Barnia prosecuted and deported to prevent him from taking legal action against defendants.

[Id.].  On or around November 4, 2021, a man came to the dental clinic Dr. Barnia was working

at in Northbridge, Massachusetts, in a car with a New York license plate.  [Id. at ¶ 49].  Dr.

Barnia alleges that this person was sent by the defendants to intimidate and harass him.  [Id.].

The threats to have him criminally prosecuted and deported made Dr. Barnia live in fear

of being separated from his family.  [Id. at ¶ 50].  Dr. Barnia also believes that the claims made

to insurance companies and employees at Palmer Dental jeopardized his dental license and

insurance credential.  [Id.]].  Dr. Barnia states that these actions caused his mental health to

deteriorate, family life to suffer, brought him and his family emotional pain, and prevented him

from sleeping at night for weeks.  [Id.].

Dr. Barnia brings ten claims against the defendants.  [Id. at ¶¶ 51-103].  He first brings

claims for breach of contract (Count I), violation of the Massachusetts Wage Act (Count II),

quantum meruit and unjust enrichment (Count III), and fraud (Count IV) in order to recover the

management bonus, he believes he was entitled to.  [Id. at ¶¶ 51-70].  He further seeks an

accounting (Count V) in order to enable him to calculate the dental practices' profits and his

management bonus.  [Id. at ¶¶ 71-73].  In response to the dispute over the sale of the two dental

practices, Dr. Barnia brings a request for specific performance (Count VIII).  [Id. at ¶¶ 88-93].

He also brings a second claim for breach of contract (Count IX), and a claim for violation of

Chapter 93A (Count X) for unfair and/or deceptive acts.  [Id. at 94-103].  In response to

defendants' actions during the above-described dispute, Dr. Barnia brings claims for defamation (Count VI) and intentional infliction of emotional distress (Count VII).  [Id. at 74-87].

## II.  Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán, 734 F.3d at 103.  First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

## III.  Discussion

Dr. Barnia's claims relate to the promised management bonus; the sale price of the Webster Smiles and Palmer Dental; and the defendants' conduct during the attempted sale of Webster Smiles and Palmer Dental.  The defendants seek to dismiss all claims.

### A.  The Management Bonus Agreement

Defendants argue that the oral agreement guaranteeing the management bonus is unenforceable for several reasons.  First, they argue that it violates the statute of frauds since it could not be performed in less than one year.  [Dkt. 14 at 4-6].  Second, they argue that the oral contract was too vague and indefinite to be enforceable.  [Id. at 6-7].  Third, they claim that the oral agreement is barred by the parol evidence rule since the written 2014 employment agreement is in place.  [Id. at 7-8].  Dr. Barnia contends that the oral contract could have been performed in less than one year, that material terms of the contract are sufficient to be enforceable, and that the parol evidence rule is vitiated by his assertion of fraud on the part of defendants.  [Dkt. 18 at 14-18].  Defendant in response asserts that the claim of fraud is time-barred and insufficient to meet the heighted standard under Fed. R. Civ. P. 9(b).  [Dkt. 21 at 1-3].

### 1. Statute of Frauds

According to the plaintiff's Amended Complaint, Dr. Kaur promised that, in addition to earning compensation based on working in the dental practice, Dr. Barnia would earn an "annual management bonus equal to 50% of the practice's profits." [Am. Cmplt. at ¶ 13].  This arrangement was not included in the written employment contract because Dr. Kaur advised Dr. Barnia that it would help avoid any misinterpretation by U.S. Citizenship and Immigration Services of the profit-sharing provision as an ownership interest, which, under the terms of Dr. Barnia's work visa, he could not possess.  [Id. at ¶ 16].

Under Massachusetts's statute of frauds, a contract must be in writing and signed by the party subject to the enforcement action in order for the contract to be enforceable.  Mass. Gen. Laws. ch. 259 § 1.  If it is possible for a contract to be performed within one year, it is not covered by the statute of frauds, even if performance may, in fact, extend beyond one year.  Id.; JLB LLC v. Egger, 462 F. Supp. 3d 68, 87 (D. Mass. 2020); see also Boothby v. Texon, 608

N.E.2d 1028, 1035 (Mass. 1993); Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 551 (1st Cir. 1989). An oral employment contract of permanent employment or employment for an indefinite period is enforceable and does not fall within the statute of frauds, because the employee may die within one year or the employer may go out of business. Meng v. Trustees of Bos. Univ., 693 N.E.2d 183, 185 (1998) (finding that the statute of frauds applied in employment dispute because the contract called for payments of salary and benefits over a specified fourteen-month period).

According to the plaintiff's Amended Complaint, Dr. Barnia's oral agreement regarding the payment of bonuses was indefinite and required payment of 50% of profits earned by the practice, which was to be calculated at the end of the calendar year. [Am. Cmplt. at ¶ 15]. Dr. Barnia moved to Boston sometime in February of 2014 and his employment contract was first executed on the July 30th, 2014, making him eligible for a profit-based bonus for the first time at the end of the calendar year that December 2014—less than a year later. [Am. Cmplt. at ¶ 14, Dkt. 10-1]. Because the defendants would have owed the bonus, per the oral agreement, within the first year of Dr. Barnia's employment, the statute of frauds does not apply. See Mass. Gen. Laws ch. 259, § 1; Doherty, 878 F.2d at 551-52 (1st Cir. 1989) ("A contract for lifetime employment is not subject to the statute of frauds, because the contract may be performed within one year if the employee happens to die within the year").

The defendants argue that the oral agreement required Dr. Barnia to be perform for a complete year prior to payment of the management bonus. However, under the facts alleged, which the Court must accept as true at this stage, the oral agreement required the payment of the management bonus at the end of each calendar year, after profits were calculated, and therefore did not require Dr. Barnia to work for a full year before becoming eligible to receive the bonus.

Defendants' reliance on McMorrow v. Rodman Ford Sales, Inc., is misplaced.  462 F. Supp. 947, 948 (D. Mass. 1979).  In McMorrow, the oral contract explicitly called for an employment period of one year and was set to begin in the future.  Id.  The opportunity to re-negotiate the contract six months in did not change the fact that it could not be performed within one year.  Id. at 948-49. [2]

## 2. Vagueness and Indefiniteness

The defendants contend that the oral contract is too vague and indefinite to be enforceable. Oral and written contracts must be definite, that is, "of reasonable certainty and not pristine preciseness," in order to be enforceable.  Mayo v. Schooner Capital Corp., 825 F.2d 566, 570 (1st Cir. 1987) (finding that oral contract for commissions on dam installation was not so vague as to be unenforceable) (citations omitted).  The Court cannot enforce a contract when the contract lacks essential terms, or the terms are too vague or indefinite.  Held v. Zamparelli, 431 N.E.2d 961, 962 (Mass. App. Ct. 1982).  However, the Court can apply common sense understanding to terms like "revenue" or "profit."  Sullivan v. Dumont Aircraft Charter, LLC, 364 F. Supp. 3d 63, 80 (D. Mass. 2019) (interpreting plaintiff's claim to share of profits); Callisto Corp. v. Inter-State Studio & Pub. Co., No. CIV.A. 05-11953-GAO, 2006 WL 1240711, at *2 (D. Mass. May 4, 2006).  A contract is not to be struck down "because one of its material provisions is stated in broad and general terms if, when applied to the transaction and construed in the light of the attending circumstances, the meaning to be attributed to it can be interpreted with reasonable certainty so that the rights and obligations of the parties can be fixed and determined."  Cygan v. Megathlin, 96 N.E.2d 702, 703 (Mass. 1951).

---

[2] Because the statute of frauds does not bar introduction of the oral agreement, the Court need not address the parties' promissory estoppel arguments.

The oral contract is not so vague and indefinite as to be unenforceable. In exchange for Dr. Barnia's services in establishing and managing the dental practices, Dr. Kaur promised to pay Dr. Barnia a nondiscretionary bonus of 50% of the profits, in addition to his salary, which was outlined in the 2014 employment contract.  [Am. Cmplt. at ¶¶ 12-17, 22-25].  That bonus was owed and payable at the end of each calendar year. [Id. at ¶ 15]. These essential terms are clear on the face of the Amended Complaint.  See Held v. Zamparelli, 431 N.E.2d at 962. Furthermore, the parties during discovery, will have the opportunity to develop the facts regarding the contours of the oral agreement at which point the Court can make a more appropriate determination as to whether the alleged contract lacked any essential terms.

### 3. Parol Evidence Rule and Fraud

Under the parol evidence rule, evidence of agreements, both written and oral, may not be used to modify or contradict the terms of an integrated and complete written agreement. Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC, 518 F. Supp. 2d 328, 331 (D. Mass. 2007); Cambridgeport Sav. Bank v. Boersner, 597 N.E.2d 1017, 1020 (Mass. 1992). However, a party cannot rely on such evidence to protect itself from claims of fraud and deceit. Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941); McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 193 n. 5 (Mass. 1990) ("It is well established that the parol evidence rule does not apply when the complaining party alleges fraud in the inducement.")

The presence of a merger or integration clause, which claims that an agreement is an integrated and final agreement, as is present in Dr. Barnia's 2014 contract, is no exception when there are allegations of fraud and deceit regarding the formation of the contract.  [See Dkt. 10-1]; see also Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 226 (1st Cir. 2003) ("[I]t is well settled in Massachusetts that '[a]n integration clause in a contract does not insulate

automatically a party from liability where he induced another person to enter into a contract by misrepresentation.'") (quoting <u>Starr v. Fordham</u>, 648 N.E.2d 1261, 1268 (1995)). Contracts may be "rescinded or reformed where there has been fraud by one party to the transaction." <u>Ward v. Ward</u>, 874 N.E.2d 433, 437 n. 5 (Mass. App. Ct. 2007).

Claims of fraud must be plead with particularity pursuant to Fed. R. Civ. P. 9(b). The purpose of this heightened pleading requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996). The complaint must "specify[] the false statements and by whom they were made" and "identify[] the basis for inferring scienter"; further, it must also set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." <u>North Am. Catholic Educ. Prog. Fdn., Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009) (quoting <u>Greenstone v. Cambex Corp.</u>, 975 F.2d 22, 25 (1st Cir. 1992).

Dr. Barnia's claim meets the pleading requirements of particularity under Rule 9(b). Dr. Barnia has claimed that defendants fraudulently induced him into signing the 2014 employment agreement. He states that defendants knowingly and falsely represented to him that he would be paid a nondiscretionary bonus of 50% of the profits from the dental practices he managed, which induced him into agreeing to the initial contract and the subsequent expansion. [Am. Cmplt. at ¶¶ 16, 17, 24, 25, 67]. The decision to exclude the bonus structure was made by Dr. Kaur in order to avoid issues with Dr. Barnia's work visa. [Am. Cmplt. at ¶ 16]. Dr. Barnia claims that he was told that the practice was not profitable, even though he later found out that it, in fact, was. [Am. Cmplt. at ¶ 23]. He identifies Dr. Kaur as making false statements about the promised

management bonus when they began their business venture around August 13, 2013; when Dr.

Barnia arrived in Massachusetts after February 2014; when the contract was executed in July of

2014 and the provision was deliberately left out; and when the promise was renewed at the

opening of the second branch in 2017.  [Am. Cmplt. at ¶¶ 11, 16, 17, 24].

### 4. Statute of Limitations

Defendant raises the issue of the statute of limitations which limits action of contract to

recover for personal injuries to within three years after the claim accrued. Mass. Gen. Laws ch.

260, § 2A.  If a person fraudulently conceals the cause of action, the period before the discovery

of the cause of action is excluded in determining the time available to bring an action.  Mass.

Gen. Laws ch. 260 § 12.  In other words, the clock starts when the plaintiff knows or should have

known of their injury.  Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 130 (1st Cir. 1987);

O'Rourke v. Jason Inc., 978 F. Supp. 41, 50-51 (D. Mass. 1997).  Plaintiffs are obliged to be

reasonably diligent to uncover the facts underlying their potential claims when on notice of the

possibility of injury.  Maggio, 824 F.2d at 130-31.  The facts giving rise to the action must

"inherently unknowable" to the injured party.  O'Rourke, 978 F. Supp. at 50-51; The Saenger

Organization, Inc. v. Nationwide Insurance Licensing Assoc., Inc., 119 F.3d 55, 65 (1st Cir.

1997).

Dr. Barnia claims that he relied on Dr. Kaur's oral promises of a yearly management

bonus when the agreement was made. [Am. Cmplt. ¶¶ 12-16].  He alleges that while he managed

the dental practice's day to day operations, Dr. Kaur's accountant in New York handled the

finances preventing him from knowing how profitable either practice was.  [Id. at ¶ 22].  Dr.

Barnia claims that he inquired into the profitability of the practice and his bonus but was told by

Dr. Kaur that the practice was not yet profitable.  [Id. at ¶ 23].  In order to meet the needs of the

dental practices with the commencement of the COVID-19 pandemic, Dr. Barnia was then given access to the businesses bank accounts, at which point he would have been on notice about any discrepancy between Dr. Kaur's statements and the financial performance of the dental practices. [Dkt. 18 at 9].  If access was granted even months before the declaration of the pandemic in March of 2020, Dr. Barnia would be within the three-year statute of limitations when he filed his complaint in January 2021.[3]  [Dkt. 1-1 at 17].

For all of these reasons, the defendants' motion to dismiss is denied as to Count I and Count IV.

### B.  Quantum Meruit and Unjust Enrichment

Defendant argues that Dr. Barnia's claim for quantum meruit and unjust enrichment is insufficient because it is precluded by the 2014 employment contract and the oral contract for the management bonus.  [Dkt. 14 at 9].

Quantum meruit and unjust enrichment are treated similarly, as both have essentially the same elements.  Lockwood v. Madeiros, 506 F. Supp. 3d 73, 80 (D. Mass. 2020).  Both are equitable remedies that are not available when the claiming party has an adequate remedy under law.  Scarpaci v. Lowe's Home Ctr., LLC, 212 F. Supp. 3d 246, 253 (D. Mass. 2016); quoting Boswell v. Zephyr Lines, Inc., 606 N.E.2d 1336 (1993) ("Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.").  To succeed on a claim of unjust enrichment, a plaintiff must show that (1) they conferred a benefit on the defendants; (2) the defendants had an appreciation or knowledge of that benefit; and (3) under the circumstances, the defendants' acceptance or retention of the benefit would be inequitable

---

[3] The complaint filed in state court is dated January 10, 2021. [Dkt. 1-1 at 17]. The case was removed however on February 10, 2022.  Under 28 U.S.C. § 1446, a defendant must file to remove within 30 days after receipt of the initial pleading, it is likely that the date in the initial complaint is incorrect. Nonetheless, Dr. Barnia's complaint would still have been filed less than 3 years from the onset of him accessing the defendants financial records.

without payment for its value. <u>Lockwood</u>, 506 F. Supp. 3d at 80.  Similarly, a claim for quantum

meruit requires a plaintiff to show that (1) he rendered services to the defendants; (2) the

defendants accepted services; (3) he expected reasonable compensation; and (4) the measure of

reasonable value of services he provided.  <u>Id.</u> at 80-81.

   At issue here are two agreements which defendant contests precludes this claim: the 2014

employment contract and the oral contract regarding the management bonus.  However, since Dr.

Barnia has sufficiently plead his claim of fraud, which may lead to rescission or reformation of

the contract, the 2014 contract does not require dismissal of the claim of quantum meruit or

unjust enrichment claims at this time.  <u>See</u> <u>P.L.A.Y., Inc. v. NIKE, Inc.</u>, 1 F. Supp. 2d 60, 65 (D.

Mass. 1998) ("A court, in the exercise of its equitable discretion, typically rescinds an agreement

only upon a showing of fraud, accident, mistake or some type of grossly inequitable conduct

which renders the contract void").

   The oral contract for a yearly management bonus would also preclude relief under these

theories; however, the plaintiff pleads this count in the alternative to the court finding an

enforceable oral contract.  It is accepted practice to pursue both breach of contract and unjust

enrichment claims at the pleading stage.  <u>Lass v. Bank of Am.</u>, 695 F.3d 129, 140 (1st Cir.

2012); <u>Vieira v. First Am. Title Ins. Co.</u>, 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (noting that

Fed. R. Civ. P. 8(d) permits plaintiffs to "plead alternative and even inconsistent legal theories,

such as breach of contract and unjust enrichment" even where plaintiffs "only can recover under

one of these theories").

   Dr. Barnia claims that he provided extensive services to defendants in launching and

managing their dental practices; that the defendants knew of these services and financially

benefitted from them; that his efforts made the defendants' dental practices profitable and that

the profit-based bonus was the expected compensation which he was denied; and that he is entitled for the value of his services, which includes the bonus based on the practices' profits. [Am. Cmplt. at ¶¶ 14-30, 59-65].  Dr. Barnia has adequately plead a claim for quantum meruit and unjust enrichment and denies the motion as to Count III.

### C.   Massachusetts Wage Act

The defendants argue that the bonus Dr. Barnia alleges he was owed was contingent and was therefore not the type of compensation that authorizes a claim under the Massachusetts Wage Act (the "Wage Act").  [Dkt. 14 at 8].  Such compensation does not create a right of action under the Wage Act. Mass. Gen. Laws ch. 149 § 148.  For payments to constitute either a wage or commission under the Wage Act, they "must be assured and not contingent." Roche v. Morgan Collection, Inc., 882 F. Supp. 2d 247, 255 (D. Mass. 2012).  The only contingent compensation the Wage Act expressly recognizes is commissions, and "[a] payment based on a percentage of the business's overall profits is not a commission."  O'Connor v. Kadrmas, 135 N.E.3d 226, 238 (Mass. App. Ct. 2019).

Even though Dr. Barnia alleges that the management bonus was "non-discretionary," its payment was still contingent on the dental practices' profitability, a prospect that was uncertain to Dr. Barnia in its initial years.  [See Am. Cmplt. at ¶ 23].  The profit-based bonus can therefore only be understood as contingent.  [See id.]. The bonus also cannot be understood as a commission.  See O'Connor, 135 N.E.3d at 188.

The Court therefore grants the motion to dismiss as to Count II.

### D.   Judicial Accounting

The defendants assert that their dispute with Dr. Barnia does not give rise to the factors necessary to justify the remedy of a judicial accounting.  [Dkt. 14 at 12].

An accounting is an equitable remedy available when the parties are in a fiduciary relationship or where accounts are so complicated that an action at law would not be an adequate remedy. Porter v. Reid, 79 F. Supp. 898, 907 (D. Mass. 1948) (citing Berwin v. Cable 47 N.E.2d 951, 954–955 (Mass. 1943)). The Court enjoys a great deal of discretion in determining whether to allow an accounting. Porter, 79 F. Supp. at 907. The Court can order an accounting as a remedy to a breach of contract to determine profits owed. SiOnyx, LLC v. Hamamatsu Photonics K.K., No. CV 15-13488-FDS, 2019 WL 3358599, at *3 (D. Mass. July 25, 2019), aff'd, 981 F.3d 1339 (Fed. Cir. 2020) (ordering "an accounting of revenues and profits" in order to "ensure that plaintiffs are appropriately compensated").

The Court employs its discretion here and declines to dismiss Dr. Barnia's request for a judicial accounting. An accounting may become relevant to determine the amount of profits owed to ensure that Dr. Barnia is appropriately compensated. See SiOnyx, LLC, 2019 WL 3358599, at *3; [Am. Cmplt. at ¶¶ 71-73]. Accordingly, the motion to dismiss Count V is **DENIED.**

### E.   Defamation

The defendants contend that Dr. Barnia's claim of defamation should be dismissed because it does not contain the specifics needed to meet the heightened pleading standard for defamation under Massachusetts law, because it does not provide sufficient details of the defamatory statements including to whom and when they were made, and because defendants have a business interest privilege which allows them to publish otherwise defamatory information if it is reasonably necessary for their legitimate business interests. [Dkt. 14 at 16-18].

To prevail on a claim of libel or slander, a plaintiff must establish that "(1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any privilege that may have attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." Lawless v. Estrella, 160 N.E.3d 1253, 1257 (Mass. App. Ct. 2020) (citing Downey v. Chutehall Constr. Co., 19 N.E.3d 470, 474 (Mass. App. Ct. 2014)). In most cases, the statement "must be false." Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 836 n.6 (Mass. App. Ct. 2012). Moreover, the statement "must reasonably be understood either as a statement of actual fact, or one that implies defamatory facts," and statements "of pure opinion are not actionable." Lawless, 160 N.E.3d at 1257-58. Whether a statement is one of fact or opinion is a question of law "if the statement unambiguously constitutes either fact or opinion." Id. at 1259. Publication requires the communication of the defamatory statement to a third party. Id.

As a preliminary matter, the Court does not apply Massachusetts' heightened pleading standard for defamation as under Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003), state pleading requirements on causes of action like defamation are irrelevant in federal court even as to claims arising under state law.[4] See also Bleau v. Greater Lynn Mental Health & Retardation Assoc., 371 F.Supp.2d 1, 2 (D. Mass. 2005).

---

[4] Even if the Court were to apply the higher standard, Dr. Barnia would likely be able to meet it because he has provided an overview of the content and type of defamatory statements, including one example in the form of a letter which he alleges is false and defamatory, the general date of on or around November 4, 2020 on which much of these statements were published, and has plead that the statements therein were false. See Haney v. City of Bos., No. CIV.A. 11-2668-C, 2012 WL 3144816, at *5 (Mass. Super. July 30, 2012); [Am. Cmplt. at ¶¶ 45-48].

Dr. Barnia alleges the following specifics about defendants' conduct: that on November 4, 2020, the defendants traveled to Massachusetts and told representatives at Palmer Dental that Dr. Barnia was fired; that the defendants then sent text messages and letters to employees at the dental practice, stating that Dr. Barnia had engaged in insurance fraud and forgery; and that these statements were also shared with insurance companies, vendors, and other third parties.  [Am. Cmplt. at ¶¶ 45-48, 77].  Furthermore, Dr. Barnia attaches a letter, written by Dr. Kaur, to the Amended Complaint, which alleges that Dr. Barnia forged her signature and that she subsequently filed a criminal complaint against him. [Dkt. 12-1].

Defendant raises as a defense the conditional business privilege, which protects the publication of otherwise defamatory statements if doing so was "reasonably necessary" for "the protection or furtherance of a legitimate business interest." Bratt v. Intl. Bus. Machines Corp., 467 N.E.2d 126, 131 (Mass. 1984).  Since the conditional business privilege does not apply when defendant publishes the statements recklessly or with knowledge of their falsity, as is alleged here, the privilege does not apply.  See id. at 132.

The motion to dismiss Count VI is denied.

### F.   Intentional-Infliction of Emotional Distress

The defendants argue that their alleged actions do not meet the high bar needed to plead emotional distress.  [Dkt. 14 at 18-20].  To establish an intentional infliction of emotional distress claim, a plaintiff must show that (1) the defendants intended to inflict emotional distress or knew that emotional distress were the likely result of the conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendants were the cause of the plaintiff's distress; and (4) the emotional distress sustained by Plaintiff was severe and of a nature that no reasonable person

could be expected to endure it.  Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976).  This is a "very high" standard to meet, and "situations where only bad manners and mere hurt feelings are involved" do not suffice.  Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citations omitted).

  Conduct is considered extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community."  Roman v. Trustees of Tufts College, 964 N.E.2d 331, 341 (Mass. 2012) (citations omitted).  Bringing a meritless civil action or instigating criminal investigations can be categorized as extreme and outrageous conduct if these actions are taken without any basis in law or fact.  Vittands v. Sudduth, 730 N.E.2d 325, 336 (Mass. App. Ct. 2000) (denying summary judgment motion on intentional infliction of emotional distress claim in response to a lawsuit that lacked any reasonable factual or legal basis); See also Bazinet v. Thorpe, 190 F. Supp. 3d 229, 240 (D. Mass. 2016) (police officers fabricating evidence to obtain criminal charges against an innocent citizen was sufficient to meet intentional infliction of emotional distress standard); but see Padmanabhan v. City of Cambridge, 166 N.E.3d 1010, 1021 (Mass. App. Ct., 2021) (false allegations of wrongdoing and perversely using litigation process insufficient to allege intentional infliction of emotion distress).

    Here, Dr. Barnia alleges that the defendants extorted him by changing the sale price of the dental practices and telling him that if he did not agree, they would go to the police and "raise baseless, fabricated, and invented charges in the hopes of having Dr. Barnia criminally prosecuted (and then deported)."  [Am. Cmplt. at ¶ 42].  He also alleges that the defendants followed through on this threat by reporting Dr. Barnia to the Palmer Police.  [Id. at 48].  He further details that the defendants told his colleagues and insurance companies Dr. Barnia

worked with that Dr. Barnia had been fired, was engaged in insurance fraud, and had committed

forgery in an attempt to ruin his career.  [Id. at 45-46].  He also alleges that the defendants sent

someone from New York to come to Dr. Barnia's place of business in order to intimidate, scare,

and inflict emotional distress.  [Id. at 49].  The impact of all of this Dr. Barnia claims was that he

began to live under fear of being deported of being separated from his family, that his career was

in jeopardy, and that he could not sleep for weeks as his mental health deteriorated.  [Id. at 50].

While all these actions individually may not rise to the level of extreme and outrageous

conduct, taken together, the pleadings plausibly allege a claim of intentional infliction of

emotional distress.  Taking Dr. Barnia's allegations as true at this stage, as the Court must, the

defendants' actions and Dr. Barnia's response involve more than "bad manners and mere hurt

feelings," and instead allege that the defendants lied and manipulated the criminal justice system

to take advantage of Dr. Barnia's immigration status in order to upend his life.  See Doyle v.

Hasbro, Inc., 103 F.3d at 195.

The motion to dismiss Count VII is therefore denied.

### G.  Contract for Sale of Dental Practices

Dr. Barnia's second breach of contract claim is based on the sale of Webster Smiles and

Palmer Dental to AAA Dental PC for the sum of $700,000.  The defendants contend that they

did not assent to the material terms of the sale and therefore the purchase agreement outlining the

sale is not enforceable.  To survive dismissal, the plaintiff must show that (1) that a valid,

binding contract existed; (2) the defendants breached the terms of the contract; and (3) the

plaintiff suffered damages as a result of the breach.  Conway v. Licata, 104 F. Supp. 3d 104, 113

(D. Mass. 2015) (quoting  Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st

Cir. 2007)).  To create an enforceable contract, the parties must agree on the material terms and

must have a present intention to be bound by that agreement.  Situation Mgt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000).  It is "not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract."'  D'Agostino v. Fed. Ins. Co., 969 F.Supp.2d 116, 127 (D.Mass. 2013) (quoting Situation Mgmt. Sys., 724 N.E.2d at 703).  Rather, an enforceable contract exists when "the parties [] have reached an agreement on all of the essential terms."  Id.  Even before a written contract is executed, if all material terms have been agreed upon, it may be inferred that the writing to be drafted is a mere memorial of the contract.  Situation Mgmt. Sys., 724 N.E.2d at 704; quoting Rosenfield v. U. S. Tr. Co., 195 N.E. 323, 325 (Mass. 1935).  Partial performance can be seen as evidence of intent to be bound by a preliminary agreement. Six Flags, Inc. v. Steadfast Ins. Co., 474 F. Supp. 2d 201, 207 (D. Mass. 2007)

Dr. Barnia claims that the parties agreed on a purchase price of $700,000; the date at which the ownership change would occur and the title assets and business income would change hands; the transfer of expenses of the dental practices; that Dr. Barnia would change the names on the leases of the dental practices; and that Dr. Barnia would complete the relevant paperwork, including for insurance credentialing for the ownership change.  [Am. Cmplt. at ¶¶ 31-39].  Furthermore, Dr. Barnia alleges that two parties partially performed the agreement for months following their initial oral agreement including by having Dr. Barnia form the corporate entity of AA Dental PC and interface with insurance companies, and together agreeing on how certain expenses were dealt with.  [Id. at ¶¶ 32-33, 39].  Taken together, these factual allegations suggest that the parties agreed on the material terms of a contract for the sale of the practice, even though certain specifics of the deal remained outstanding.

Dr. Barnia also plausibly alleges that by changing the price of the deal by nearly $300,000, the defendants breached the contract and caused him financial harm. The defendants argue that the agreement over the sale price was not a meaningful assent. In Dr. Singh's voicemail, he said the price on the purchase agreement was "acceptable" yet he also said he wanted to discuss certain issues with his attorney and accountant. [Dkt. 14 at 14]. This argument fails because Dr. Barnia alleges that the contract was formed months prior to the agreement being memorialized on paper and has plead sufficient factual allegations to show that two parties had assented to the material terms and begun performance of the contract. [Am. Cmplt. at ¶¶ 31-39].

The defendants' motion to dismiss as to Counts IX and VIII[5] is therefore denied.

### H. Chapter 93A

The defendants argue that the dispute over the sale does not give rise to a claim under Chapter 93A because the statute does not cover disputes in employment relationship and because defendants and Dr. Barnia were not engaged in trade or commerce. [Dkt. 14 at 15-16].

To prevail under Mass. Gen. Laws. ch. 93A §§ 2 and 11, a plaintiff must prove that the defendants committed an unfair or deceptive trade practice, and that the plaintiff suffered a loss of money or property as a result. Bowers v. Baystate Techs., Inc., 101 F. Supp. 2d 53, 54 (D. Mass. 2000). For a breach of contract to rise to this standard, the objectionable conduct must be "in disregard of known contractual arrangements and intended to secure benefits for the breaching party or otherwise use the breach as a lever to obtain advantage for the party

---

[5] Dr. Barnia also requests that the Court grant the remedy of specific performance and order that the defendants sell him the practice for the previously agreed upon sum. While this request is plead as Count VIII in the complaint, specific performance is a request for a remedy and not a separate cause of action. See Feeney v. Transition Automation, Inc., No. CIV A 06-11677-RWZ, 2008 WL 190766, at *2 (D. Mass. Jan. 9, 2008). The District Court has "a reasonable range of discretion . . . with respect to granting or denying specific performance. Raynor v. Russell, 231 N.E.2d 563, 564 (Mass. 1967). The Court will address the appropriateness of this remedy, should it become relevant, at a later date.

committing the breach in relation to the other party, i.e., the breach of contract [must have] an extortionate quality that gives it the rancid flavor of unfairness." Clinical Tech., Inc. v. Covidien Sales, LLC, 192 F. Supp. 3d 223, 242 (D. Mass. 2016) (citations omitted).  Fraudulent conduct can give rise to a Chapter 93A claim.  McEvoy Travel Bureau, Inc. v. Norton Co., 563 N.E.2d 188, 195 (Mass. 1990).

Dr. Barnia alleges that the defendants entered a binding contract for the sale of the dental practices.  He also alleges they then proceeded to extort him by demanding a significant lump sum payment, which was nearly $300,000 above the agreed upon price, and that they threatened to destroy his reputation, press criminal charges, and attempt to get him deported if he did not acquiesce.  [Am. Cmplt. at ¶ 30-50].  These allegations, if true, are sufficient to be considered unfair and deceptive trade practice under Chapter 93A.

The motion to dismiss as to Count X is therefore denied.

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss for failure to state a claim [Dkt. 13] is **GRANTED IN PART** and **DENIED IN PART**.  The motion as to Counts I, III, IV, VI, VII, VIII, IX, X is **DENIED**.  The motion as to Counts II is **GRANTED**.

**SO ORDERED.**

Dated: 12/5/2022                                                /s/ Angel Kelley
                                                                Hon. Angel Kelley
                                                                United States District Judge